UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case No. 19-CR-44

STEVEN M. RADER,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Julie F. Stewart, Assistant United States Attorney, and the defendant, Steven M. Rader, individually and by attorney Patrick J. Knight, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant will be charged in a criminal information, filed in conjunction with this plea agreement, with one count of tax evasion, in violation of Title 26, United States Code, Section 7201.

3. The defendant has read and fully understands the charge contained in the information. He fully understands the nature and elements of the crime with which he has been charged, and that charge and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the charge contained in the information, which is set forth in full as follows:

On or about February 2, 2015, in the State and Eastern District of Wisconsin,

**STEVEN M. RADER**

did willfully and knowingly attempt to evade and defeat a large part of the income tax due and owing by him to the United States of America for the calendar year 2014, by preparing and causing the preparation of a false and fraudulent 2014 U.S. Individual Income Tax Return, Form 1040A. Specifically, the defendant filed a return in which he stated that he had taxable income for the 2014 calendar year of $9,000 and in which he claimed entitlement to a refund of $2,114, when the defendant knew and believed that he had taxable income of approximately $109,776 and that, as a result, the actual amount of income tax, including self-employment tax, due and owing to the United States of America by the defendant for 2014 was approximately $34,427.

All in violation of Title 26, United States Code, Section 7201.

6. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense charged in the information. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish his guilt beyond a reasonable doubt:

At all times relevant to this prosecution and, in particular, during the years 2012-2014, defendant Steven M. Rader ("Rader") resided in Muskego, Wisconsin, which is in the Eastern District of Wisconsin. During these years, Rader worked part-time as a Technical Director for Hamilton School District. He was paid $9,000 per year in that role. During these years, Rader also owned and operated Willie Fun Entertainment ("WFE") as a sole proprietorship.

Rader filed federal income tax returns (Forms 1040EZ and 1040A) for the years 2012-2014, on which he reported his income from Hamilton School District. Rader did not file a Schedule C or report any income from WFE on his tax returns. Rader prepared and filed his own tax returns.

After being informed that his 2013 tax returns were being audited, Rader filed an amended tax return for 2014 and submitted amended tax returns for 2012 and 2013 to the IRS Revenue Agent ("IRS Agent"). Rader's amended tax returns for 2012-2014 listed income received by WFE via PayPal. Rader's amended tax returns provided that Rader's taxable income from WFE for the

2

three-year period was $223,466.10. Rader's amended returns continued to omit WFE income received via cash and check.

The following is a summary of the total amount of income and tax reported by Rader on tax returns filed with the IRS (both initially, and as amended):

| Taxable Income and Liabilities | 2012 | 2013 | 2014 (as amended) |
|---|---|---|---|
| Reported Wages | $9,000 | $9,000 | $9,000 |
| Reported total income | $0 | $0 | $2,474 |
| Reported AGI | $9,000 | $9,000 | $2,474 |
| Reported Taxable Income | $0 | $0 | $0 |
| Reported Total Tax Refund | $2,000 | $2,011 | $2,114 |

On October 13, 2015, an IRS Agent interviewed Rader. During that interview, Rader explained that he prepared all of his original and amended returns. He stated that he started WFE in 2012 and that he received income for that business *only* via PayPal. He explicitly stated that he did not receive WFE payments by cash or check and that he did not use any other credit card processers.

When asked why he didn't report any income from WFE on his originally filed returns, Rader explained that he didn't think he was making any money. Rader also said that he did not have any large accumulation of cash and had no income records other than PayPal. Rader told the IRS Agent that he paid business expenses by check, credit card, or PayPal, and that he started using Quickbooks "after the fact" for the years 2012-2014. Rader also submitted a Questionnaire in which he claimed that WFE clients paid him exclusively via credit cards.

Based on an analysis of the business records for WFE, including the records for Rader's bank accounts, the IRS determined that Rader failed to report substantial additional income he received during the years 2012-2014 and, thereby, substantially understated his taxable income and associated tax liabilities for these years. The following is a summary of the unreported receipts and income Rader received from WFE, and Rader's actual taxable income and tax liabilities for these years.

| Taxable Income and Liabilities | 2012 | 2013 | 2014 |
|---|---|---|---|
| Wages | $9,000 | $9,000 | $9,000 |
| Gross Receipts from PayPal (WFE) | $50,415 | $73,206 | $99,846 |
| Additional WFE Income | $119,599 | $107,181 | $107,302 |
| Total Schedule C Income | $170,014 | $180,387 | $207,148 |
| Total AGI | $90,736 | $86,598 | $102,656 |
| Total tax due and owing | $27,456 | $27,278 | $34,427 |

Thus, by failing to report the income he received from WFE, Rader willfully understated and under paid his federal income taxes for the years 2012-2014 by approximately $89,000.

3

Case 2:19-cr-00044-JPS   Filed 02/27/19   Page 3 of 16   Document 2

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, the offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum terms of imprisonment and fines: Five (5) years and $250,000. The count also carries a mandatory special assessment of $100, and a maximum of three (3) years of supervised release.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of tax evasion, as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, on April 15, of the year following the tax year, federal income tax was due and owing by the defendant; and
>
> Second, the defendant knew he had a legal duty to pay the tax; and
>
> Third, the defendant did some affirmative act to evade payment, assessment, or computation of the tax; and
>
> Fourth, in doing so, the defendant acted willfully, that is, with the intent to violate his legal duty to pay the tax.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

4

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

13. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

14. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the

5

sentencing guidelines range, even if the relevant conduct is not the subject of the offenses to which the defendant is pleading guilty.

15. For purposes of determining the defendant's offense level under the sentencing guidelines, the parties acknowledge that, based upon the information presently available, the tax loss associated with the defendant's criminal conduct is approximately $89,000.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense to which the defendant will plead guilty is 14 under Sentencing Guidelines Manual §§ 2T1.1(a)(1) and 2T4.1(E).

## Acceptance of Responsibility

17. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility.

## Sentencing Recommendations

18. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

19. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

20. The government agrees to recommend a sentence at the low end of the applicable sentencing guideline range, as determined by the court. Recognizing that the Guidelines are advisory rather than mandatory, the defendant reserves the right to argue for a sentence that is less

than the sentence that might otherwise be imposed under the Guidelines, including a sentence of probation.

## Court's Determinations at Sentencing

21. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

22. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty pleas solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

23. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

24. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and

7

sworn financial statement on a form provided by FLU and any documentation required by the form.

## Special Assessment

25. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing

## Restitution

26. The defendant agrees that the restitution due and owing to the IRS is $89,161.00. The defendant further recognizes and has been advised that, absent his consent, restitution for this charge is limited to that amount.

27. In addition to the acknowledged restitution provided by paragraph 26 above, Defendant consents to the inclusion of Civil Penalties of $70,661.00 and interest under the IRS Code of $29,597.00 as restitution for this offense. Defendant thereby agrees and consents to a restitution order of $195,544.00 payable to the IRS.

28. The defendant agrees that the total amount of restitution reflected in this agreement results from defendant's fraudulent conduct. The total amount of restitution consists of the following:

| Tax year | Refund Improperly Claimed | Tax Due and Owing | Civil Penalties | Interest under the Internal Revenue Code Due through November 29, 2018 |
|---|---|---|---|---|
| 2012 | $2,000 | $27,456 | $20,592 | $10,749 |
| 2013 | $2,011 | $27,278 | $24,249 | $9,664 |
| 2014 | $2,114 | $34,427 | $25,820 | $9,185 |
| Total | $6,125 | $89,161 | $70,661 | $29,597 |

8

*This interest figure has been calculated by the IRS under 26 U.S.C. §§ 6601 and/or 6621 as of the indicated date. This interest figure does not include any interest that may accrue under 18 U.S.C. § 3612.

29. The defendant agrees that he will pay one half of the restitution amount, or $97,772, at sentencing.

30. The defendant agrees that he will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an immediate assessment of that portion of the tax and interest that he agrees to pay as restitution. The defendant also agrees to sign IRS Form 8821, ATax Information Authorization.@

31. The defendant agrees not to file any claim for refund of taxes or interest represented by any amount of restitution paid pursuant to this agreement.

32. The defendant agrees that he is liable for the fraud penalty under 26 U.S.C. '' 6663 or 6651(f) on the amount to be credited to tax set forth above in paragraph 28. The defendant agrees to the immediate assessment of the fraud penalty on the amount to be credited to tax set forth above and agrees that, in order to enable the IRS to make an immediate assessment of the fraud penalty, the IRS form he agreed to sign in paragraph 29 will include the appropriate amount of the fraud penalty. The defendant agrees not to challenge or dispute any fraud penalties on the amount to be credited to tax set forth in paragraph 28.

33. The parties understand that defendant will receive proper credit, consistent with paragraph 28 above, for the payments made pursuant to this agreement. Except as set forth in the previous sentence, nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time periods covered by this agreement or any other time period.

9

34. The defendant agrees that this agreement, or any judgment, order, release, or satisfaction issued in connection with this agreement, will not satisfy, settle, or compromise the defendant's obligation to pay the balance of any remaining civil liabilities, including tax, additional tax, additions to tax, interest, and penalties, owed to the IRS for the time periods covered by this agreement or any other time period.

35. The defendant agrees that, unless the Director of the Administrative Office of the United States Courts directs him otherwise, all payments made pursuant to the court's restitution order are to be sent only to the Clerk of the Court at the following address:

> Clerk of Court
> Eastern District of Wisconsin
> 517 East Wisconsin Avenue, Room 36
> Milwaukee, WI 53202

36. With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the defendant will provide the following information:

- The defendant's name and Social Security number;
- The District Court docket number assigned to this case;
- Tax years for which restitution has been ordered; and
- A statement that the payment is being submitted pursuant to the District Court's restitution order.

37. The defendant agrees to include a request that the Clerk of the Court send the information, along with the defendant's payments, to the appropriate office of the Internal Revenue Service.

38. The defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the following address:

IRS – RACS
Attn: Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

39. The defendant understands that he is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the Internal Revenue Service and identified by it as pertaining to his particular liability.

40. The contact information for the IRS Special Agent assigned to this case is as follows:

Special Agent Jennifer L. Kwiecinski
Internal Revenue Service - Criminal Investigation
211 W Wisconsin Ave
Milwaukee, WI 53217

**DEFENDANT'S WAIVER OF RIGHTS**

41. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

- a. If the defendant persisted in a plea of not guilty to the charge against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

- b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

11

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

42. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

43. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

44. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the

Case 2:19-cr-00044-JPS Filed 02/27/19 Page 12 of 16 Document 2

entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

45. The defendant acknowledges, understands, and agrees that the defendant has discussed with his attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

46. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

47. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

48. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

### Further Action by Internal Revenue Service

49. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

50. The defendant agrees to transmit his original records, or copies thereof, to the Examination Division of the Internal Revenue Service so that the Examination Division of the Internal Revenue Service can complete its civil audit of the defendant. The defendant agrees to provide any additional books and records of his which may be helpful to the Examination Division of the Internal Revenue Service to complete its civil audit of defendant.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

51. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

52. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees

14

that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

# ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 2-25-19

STEVEN M. RADER
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 2/25/19

PATRICK J. KNIGHT
Attorney for Defendant

For the United States of America:

Date: 2/27/19

MATTHEW D. KRUEGER
United States Attorney

Date: 2/27/19

JULIE F. STEWART
Assistant United States Attorney

16